IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Milliken & Company and Milliken Design, Inc. f/k/a Sylvan Chemical Co., Inc., | ) ) ) | Civil Action No.: 7:14-4422-BHH |
| Plaintiff, | ) ) | |
| | ) | **OPINION AND ORDER** |
| v. | ) ) | |
| Robert S. Weiner, Totally Enterprises, LLC d/b/a Totally Carpet, and Sidetuft, LLC, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the defendants' Motion to Dismiss. (ECF Nos. 8, 10.) The defendants contend that the complaint, in this case, fails to (1) state a claim under the South Carolina's Unfair Trade Practices Act ("UTPA") and the South Carolina Trade Secrets Act ("TSA"); (2) assert sufficient facts to establish that Defendants Totally Carpet and Sidetuft are the alter egos of Defendant Robert Weiner; or (3) state a claim to contractual ownership of certain inventions at issue in this case. The parties have filed a response and reply, respectively. (ECF Nos. 16, 19.)

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, the plaintiffs design, manufacture, market, and sell commercial carpet products to corporations, educational institutions, governmental agencies, healthcare facilities, and retail establishments, among others. (Compl. ¶ 15.) The plaintiffs refer to this part of their business as the Floor Covering Division. *Id*. In order to further develop their Floor Covering Division, in October 2009, the plaintiffs purchased a group of companies collectively known as Constantine. The Constantine companies competed directly with the plaintiffs in the commercial carpet industry prior to their

purchase by the plaintiffs and included a company in which Defendant Weiner held a substantial ownership interest, named Product Concepts Residential, LLC.  *Id*. at ¶¶ 16-17.  This lawsuit arises out of Weiner's subsequent alleged breach of certain agreements, discussed *infra*, entered into with the plaintiffs.  Namely, the plaintiffs contend, among numerous other similar accusations, that Weiner invited third parties onto the premises of the plaintiffs for the purposes of exposing trade secrets, confidential information, intellectual property, and inventions.  *Id*. ¶¶ 43-46.

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.  In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).  Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief."  *Iqbal*, 129 S. Ct. at 1950.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

### I.     South Carolina Unfair Trade Practices Act (SCUTPA)

The defendants' first contend that the plaintiff has not properly pled the public impact element of its SCUPTA claim. It is true that the SCUPTA only protects against wrongful conduct that has a direct and specific impact on the public interest. *See Florence Paper Co. v. Orphan*, 379 S.E.2d 289, 291 (1989). The Court, however, fairly readily finds that the Complaint alleges a public interest in the purported false advertising of the defendants regarding certain exclusive and patented technologies and alleged fraudulent misrepresentations to the patent office about the same. (Compl. ¶¶ 57-65, 58, 61-63.) This case is not simply a private employment dispute between two parties. *See Miller v. Fairfield Communities, Inc*., 382 S.E.2d 16, 20 (S.C. Ct. App. 1989). Certainly, there must

be ultimately some evidentiary basis to establish the public impact, *see Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F. Supp. 359, 362 (D.S.C. 1994); *Florence Paper Co. v. Orphan*, 379 S.E.2d 289 (1989), but at the pleading stage, the plaintiffs have sufficiently alleged impact that might so qualify.  It simply cannot be said now, and as a matter of law, that the allegations of deception to the public at large and a government agency are not of a severity, specificity, and breadth to constitute public impact for purposes of the SCUPTA.  The Fourth Circuit decision, in *Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992) and relied upon heavily by the defendants, involved a determination of public impact based on an evidentiary record, after trial and on a motion for judgment notwithstanding the verdict. The record, here, is not at all developed on this point – public impact.  The allegations, themselves, are sufficient.

Additionally, South Carolina Courts have made clear that the impact on the public interest can be shown when the "the acts or practices have the potential for repetition." *York v. Conway Ford, Inc.*, 480 S.E.2d 726, 728 (S.C. 1997) (holding that one-time sale of car that buyer claimed involved fraudulent misrepresentations on the part of the seller was actionable under SCUTPA).  The defendants' alleged representations about exclusive and proprietary technologies, as averred, are not a one time transaction but an ongoing offense, to the extent accurately accused.  (Compl. ¶¶ 163-64.)

Accordingly, the Court concludes that the plaintiffs have properly pled their SCUTPA claim with respect to public impact, the only element of that claim challenged by the defendants.

**II.     Alter Ego**

The defendants have also argued that the plaintiffs have not pled any alter ego

theory with sufficient allegations that would allow Defendant Weiner to be treated as Defendants Totally Carpet and Sidetuft. Liability on an alter ego theory requires a showing of (1) total domination and control of one entity by another person or entity and (2) inequitable consequences caused thereby. *See Colleton County Taxpayers v. School District of Colleton County*, 638 S.E.2d 685, 692 (S.C. 2006) (citing *Peoples Fed. Sav. & Loan Assoc. v. Myrtle Beach Golf & Yacht Club*, 425 S.E.2d 764, 774 (S.C. Ct.App.1992)). To satisfy these elements at the pleading stage, a plaintiff must assert plausible facts of actual domination and control of the subservient entity by the alleged dominant entity and allegations of wrongful conduct. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013). But, at "its core, the question of whether to pierce the corporate veil is a fact-intensive inquiry . . . ." *Id.* at 544.

The plaintiffs have alleged both characteristics - dominion and misconduct. The following summarized averments portend evidence of both dominion and misuse:

- Sidetuft was created by Weiner in May 2014 for the sole purpose of receiving an assignment of Weiner's interest in the stolen Intellectual Property, in further effort to conceal Weiner's wrongdoing. (Compl. ¶ 66.)

- Weiner caused Totally Carpet to act as his instrumentality for soliciting, recruiting and hiring Milliken employees in violation of Weiner's non-solicitation agreements with Milliken and those employees' non-compete agreements with Milliken. (Dkt. 1, ¶¶ 68-71, 77-78).

- Weiner caused Totally Carpet to induce former Milliken employees to use stolen Milliken trade secrets to benefit Totally Carpet, *id*. ¶ 81, and Weiner and Totally Carpet have done so with the knowledge that such action violates those employees' contractual duties to Milliken, *id*. ¶¶ 87-88.

- The formation and actions of Totally Carpet and Sidetuft were committed solely under Weiner's direction and control without any other corporate governance or oversight, and allowing them to be treated as separate corporate entities would cause injustice by aiding and effectuating his wrongdoing. *Id*. ¶ 91.

Relying on *Vitol*, the defendants contend that these allegations are not nearly enough. And, the Court would agree it is not a clear call. But, as an initial matter, *Vitol* was an admiralty case, which involved a heightened pleading standard under the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims. *See Vitol*, 708 F.3d at 541-42. But, even in light of the Rule 8 pleading requirements, the Fourth Circuit found that "at best" Vitol had made only a plausible allegation of a "close business relationship." *Id*. at 547. The court emphasized independent business acts of the entities involved. *Id*. Much more is alleged here. Namely, the plaintiffs contend that Totally Carpet and Sidetuft have done nothing without the control of Weiner, lacking any independent governance or agency, and specifically in furtherance of wrongdoing.

The Court would allow the claims against Dr. Weiner to persist. That does not mean that corporate form will ultimately be disregarded, at summary judgment or trial, based on the evidence in this case.

## III.     South Carolina Trade Secrets Claim (TSA)

The defendants next contend, with respect to the plaintiff's Trade Secrets Act claim, that the plaintiffs have not identified with specificity the trade secrets, which the defendants have allegedly misappropriated. But, they have. In particular, paragraph 44 of the Complaint describes how, in April of 2012 while still an employee of Milliken, Weiner used his personal attorney to send a "Confidential Nondisclosure Agreement" to two different carpet tufting machine manufacturers, representing that Weiner owned intellectual property described as "a tufting improvement for tufting in a direction perpendicular to the direction of backing 'Cross Tufting.'" Paragraph 45 alleges that this "Cross-Tufting improvement" is a trade secret of Milliken. Paragraphs 57-63 describe how the Defendants have sought

to exploit this intellectual property of Milliken through the filing of a provisional patent application, the touting of the technology on the Totally Carpet website, in an interview by Weiner provided to a trade website, and in a separate industry publication. The plaintiffs have identified other specific trade secrets. (Compl. ¶¶ 56, 61-65, 143.) It is unnecessary to summarize further. The pleading requirements have plainly been satisfied. Specific trade secrets are alleged.

## IV.     Agreements and Ownership Rights

The plaintiffs contend, in various allegations of the Complaint, that they own Weiner's inventions and patents or future patents for "Cross-Tufting Machine and Process for Carpet Manufacturing," "patented Cortex Technology," and "Totally Carpet's 'Total Transition Technology (T3).'"  (See Compl. at ¶ 95.)  The defendants contend that any claim based on such alleged ownership must be dismissed because the various contracts in this case preclude it.  The plaintiffs' claims to ownership of these inventions are based, in part, on provisions of a 2009 Employment Agreement, which provides that any intellectual property related to Milliken's business and developed by Weiner during his employment with Milliken or within one year after the termination of that employment is the sole and exclusive property of Milliken. (Compl. at ¶ 64.)  The defendants, emphasize, however that, according to the plaintiffs' allegations, these inventions were invented no earlier than March or April of 2012, *id*. at ¶43, well beyond the terms of the 2009 Employment Agreement, which would have necessarily expired on October 2, 2011 (2009 Employment Agreement ¶ 2).

For their citation to the Complaint and not the agreement itself, the plaintiff somewhat confusingly responds that the obligations of Weiner with respect to trade secrets

and invention ownership did not expire October 2, 2011, but survived the term of employment. *Id*. ¶ 15. This is true. Paragraph 2 of the Employment Agreement governs the term of *employment* pursuant to the Agreement. *Id*. ¶ 2. But, Paragraph 15, says that the *non-competition and ownership provisions* of Paragraphs 7 and 11 survive that term. *Id*. ¶¶ 7, 11, 15.

Moreover, Paragraph 2 of the Employment Agreement expressly states that after the expiration of the first year of Weiner's employment with Milliken, Weiner "will execute and be bound by the standard Milliken & Company **Associate Agreement**." (Employment Agreement ¶2. (emphasis added).)  The Associate Agreement also sets forth continuing obligations of Weiner that carried forward beyond the initial, one-year "Employment Period" described in the 2009 Employment Agreement and through his additional two years of employment and even after his termination of employment. Like the Employment Agreement, the Associate Agreement contains provisions concerning both non-disclosure of confidential information and trade secrets and provides for Milliken ownership of Intellectual Property developed during Weiner's employment. (See Associate Agreement at 2-6.) The defendants retort that Weiner never executed the Associate Agreement. He did not need to execute it. He executed the 2009 Employment Agreement, which prospectively subjected him to, and incorporated therein, the terms of the Associate Agreement. No additional consent was required.

But, there is yet another contract. On or around November 30, 2012, Weiner resigned and subsequently entered into a Consulting Agreement with the plaintiffs, on December 5, 2012 (the "2012 Consulting Agreement"). The defendants contend that the 2012 Consulting Agreement expressly superseded any surviving terms of the 2009

Employment Agreement that were inconsistent with the terms of the 2012 Consulting Agreement. (See Consulting Agreement at 3.) Specifically, the defendants argue that the 2012 Consulting Agreement significantly reduced the plaintiffs' purported ownership rights in any Intellectual Property, inventions, trade secrets, or similar technologies developed by Weiner insofar as it replaced Paragraph 11 of the 2009 Employment Agreement with the following language:

> [a]ny invention, trade secret, know-how and any materials, equipment, machinery, programs and designs specifically created or developed by Consultant for the sole benefit of Milliken shall become the property of Milliken. However, any such invention, trade secret, know-how and any materials, equipment, machinery, programs and designs created or developed by [Dr. Weiner] independent of this Agreement shall remain the exclusive property of [Dr. Weiner].

*Id*. The Court does not understand the point.

First, as described, the plaintiffs allege that the inventions were misappropriated and shared with third-parties in March or April 2012, before the execution of the Consulting Agreement and during the period of Weiner's employment, which was subject to the Associate Agreement, as discussed, not the Consulting Agreement. Second, the Court does not see the inconsistency between the Consulting Agreement and the Employment and Associate Agreements, in the way the defendants complain. The defendants emphasize that (1) the 2012 Consulting Agreement expressly provides, in the past tense, that only inventions "specifically created or developed by Consultant for the sole benefit of Milliken shall become the property of Milliken" (2012 Agreement at 3), but that (2) the plaintiffs have predicated their claims on an invention expressly averred as for *Weiner's own benefit*. The defendants cite paragraphs 43-46 of the complaint, in support. Those

-9-

paragraphs, however, do not confess an invention for Weiner's sole benefit. Quite the opposite, they aver inventions of Milliken, which Weiner *exposed* for his own benefit. (See Compl. ¶¶ 43-46.) So whatever limitation on his obligations the Consulting Agreement might create, and the Court presently concedes none, they are not preclusive of the plaintiffs' ability to proceed on his claims as presently pled in the Complaint.

The Court is not making a final legal determination as to all the relative rights of the parties under the various agreements beyond what is absolutely necessary to conclude that the plaintiffs may proceed.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss is DENIED. (ECF No. 8.)

IT IS SO ORDERED.

s/ Bruce Howe Hendricks
United States District Judge

September 17, 2015
Greenville, South Carolina